Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2453 | **DATE** | 9/27/2001 |
| **CASE TITLE** | Ryan vs. St. Mary of Providence | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter MEMORANDUM OPINION AND ORDER. St. Mary's motion for summary judgment is granted. St. Mary's motion to strike is denied as moot. The "Clerk" is directed to enter judgment in favor of defendant. The date for filing the final pretrial order and the trial date of 1/7/02 are vacated.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | OCT 0 1 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | 45 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| JD | courtroom deputy's initials | SEP 28 PM 12:23 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DOCKETED
OCT 01 2001

JANICE RYAN,               )
                           )
    Plaintiff,         )
                           )
v.                         )  Case No. 00 C 2453
                           )
ST. MARY OF PROVIDENCE,    )
                           )
    Defendant.         )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Janice Ryan, who suffers from degenerative disc disease and primary biliary cirrhosis, has sued her former employer, St. Mary of Providence, for disability discrimination in violation of the Americans with Disabilities Act and the Rehabilitation Act. Ryan worked as St. Mary's business and personnel manager for more than twelve years before she quit in March 1999. She claims that she quit because her employer refused to help her move and unpack her office after a move, which left her unable to perform many of the tasks she needed to do. The case is before the Court on St. Mary's motion for summary judgment.

St. Mary's argues that it is entitled to summary judgment on Ryan's complaint because neither the ADA nor the Rehabilitation Act recognizes a constructive discharge claim and because Ryan cannot make out a prima facie case of disability discrimination. The Seventh Circuit has not yet determined whether a constructive discharge claim is cognizable under the ADA, though last year the court implied that when the question is directly presented it will find that such a claim does exist. *See EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 440 & n.6 (7th Cir. 2000). Because we agree with St. Mary's that Ryan has failed to demonstrate that she will

be able to prove each element of her prima facie case, we too can leave the question for another day.

To win on her ADA claim Ryan must first demonstrate that she was disabled within the meaning of the ADA. *E.g., Skorup v. Modern Door Corp.*, 153 F.3d 512, 514 (7th Cir. 1998). At this stage, we need not decide whether Ryan was actually disabled; we ask only whether a rational jury, viewing the evidence in the light most favorable to Ryan, could conclude that Ryan was disabled under the ADA. *See, e.g., Sears*, 233 F.3d at 438. Though there is no question that Ryan has serious medical conditions, that by itself does not make her disabled as the ADA defined that term. Under the ADA, a disability is "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. §12102(2). Major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. §1630.2(j). A condition "substantially limits" a major life activity if the afflicted person is "either unable to perform, or significantly restricted as to the condition, manner or duration under which the individual can perform, a major life activity as compared to an average person in the general population." *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 506 (7th Cir. 1998).

Ryan alleges that her degenerative disc disease and her primary biliary cirrhosis rendered her disabled within the meaning of the ADA because they substantially limited her ability to walk and work. We assess disability as of the time of the adverse employment action, in this case on and around March 31, 1999, when Ryan says she was forced out of her job. The medical evidence Ryan submitted in response to St. Mary's summary judgment motion consists of the following:

- a May 19, 1992 letter from the Mayo clinic confirming Ryan's June 8, 1992 appointment with the Division of Gastroenterology for "a medical evaluation including laboratory studies, x-rays and special consultations as might be advised by our physicians";

- an August 20, 1992 letter from Dr. Michael Brown at Rush-Presbyterian-St. Luke's Medical Center stating that "because of the severity of her illness [liver disease] her husband needs to accompany her when she comes in for her office visits and other appointments";

- an August 15, 1996 FMLA certification form indicating that Ryan was diagnosed with cervical disc disease on July 12th, that the condition was expected to last 3 months, and that Ryan would be unable to perform "work of any kind" "probably for ~ 2 more months";

- a November 26, 1996 letter from Dr. Charles D'Angelo stating that Ryan, after undergoing surgery to her cervical spine, was "doing well and may return to work as of 4 December 1996";

- a prescription pad note dated February 22, 1999 that reads "[n]o lifting x 5 lbs in the next 2 months"; and

- medical records from a June 3, 1997 lumbosacral MRI and a September 5, 1997 CT cervical spine, which note impressions consistent with degenerative disc disease.

Other than the February 22, 1999 prescription pad note, none of these pieces of evidence provides any basis to conclude that Ryan's activities or abilities were in any way limited in or around March 1999. Thus the only relevant piece of information from the medical records is the fact that Ryan could lift no more than 5 pounds during this time period.

But we are not limited to the medical records; we also have Ryan's testimony concerning her condition. Counsel for St. Mary's deposed Ryan on June 18, 2001 and, largely because of the way counsel questioned her, she was not specific about when she suffered certain symptoms or what her symptoms were like in and around March 1999. But because we are viewing the facts in the light most favorable to Ryan, we will assume that the symptoms she described existed

3

during that time frame as well. Ryan's testimony concerning her symptoms can be summarized as follows:

Fatigue: Ryan testified that she suffers from chronic fatigue. Ryan Dep., p. 68. She also testified that going to bed early (around 9:30 p.m.) and getting up late (around 9:00 a.m.), plus taking naps helps with the fatigue; she elaborated that she started taking naps after she quit her job, largely because she had nothing else to do. *Id.* at 100-01. When asked what work restrictions she had in March 1999 to accommodate her conditions, she stated "[c]ome in later and work later and time off for doctors' appointments." *Id.* at 217.

Pain: Ryan testified that she experiences pain the upper right quadrant of her rib cage. Ryan Dep., p. 69. She also testified that in 1993 she suffered from chronic neck and upper back pain; it hurt to move her neck but it did not prevent her from moving it, nor did it prevent her from doing anything else. *Id.* at 72. She also testified that after surgery in 1996 she was pain free until May of 1997. *Id.* at 73. Ryan also testified that beginning in May 1997, she suffered from constant neck and lower back pain, *id.* at 73-74; she described the pain as a chronic ache coupled with intermittent sharp, shooting pains. *Id.* at 75-76.

Itching: Ryan testified that she suffers from persistent itching all over her body. *Id.* at 69. But she also testified that Aveeno lotion, an oatmeal cream, helps to lessen the itching and make it tolerable. *Id.* at 69, 98-99.

Dropped Foot: Ryan testified that she suffers from a "dropped" or "floppy" left foot. *Id.* at 78-79. She can walk one or two city blocks and then her foot starts to "drop" and can cause her to trip, though if she rests she might be able to continue. *Id.* at 74, 77, 79 90.

Numbness: Ryan testified that she has numbness in her arms and her left thigh, Id. at 74-75, 78-79. Her thigh is "like dead, numb," whereas her arms are more superficially numb, causing her to experience "pins and needles" and tingling. *Id.* at 82-83. The numbness in her thigh would prevent her from walking more than two or three blocks at the most. *Id.* at 80-81. The numbness does not prevent her from using her arms, though if she held holds anything–a pen, a cup, pots and pans–for more than half an hour, she will drop it. *Id.* at 83.

Headaches/Migraines: Ryan testified that since about 1993 she has suffered from headaches, including migraines that prevent her from functioning at all; when she has a migraine she just has to sleep, in one case for about three or four days. *Id.* at 75, 85-88. Ryan could not say how often she gets migraines, nor could she say whether they ever caused her to miss work in 1993, 1994, 1995, 1996, 1997 or 1998. *Id.* at 88-89. With a little prompting from her counsel on cross examination, she testified that she has headaches "almost all the time" and that "[t]here's too many of them to count." *Id.* at 299.

Lifting/Bending Restrictions: Ryan testified that she can't lift or move more than 10

4

pounds. Ryan Dep., p. 91. As a result, she cannot lift laundry baskets and needs help from her husband to do laundry, *id.* at 91, though she is still able to put the clothes into the washer and transfer them to the dryer. With respect to the laundry, she said "[m]y husband brings it down, and it works fine the way it's been going." *Id.* at 96-97. Ryan testified that she also needs help carrying bags of groceries. *Id.* at 290. She also testified that she cannot repeatedly bend at the waist or move boxes around, *id.* at 92, though she could not say whether the bending restriction developed before or after she left St. Mary's, *id.* at 93. She also testified that she can no longer mow the lawn because she cannot push the heavy mower and she cannot plant flowers because if she bent down she would never be able to get back up. *Id.* at 94-95. Ryan cannot remember when she stopped being able to do these things. *Id.* at 96.

Sitting: Ryan testified that she has problems sitting for long periods of time and that if she sits too long her back becomes stiff. Ryan Dep., p. 289. But she also testified that if she stands up or walks around, she is all right. *Id.*

Absenteeism/Flexible work schedule: Ryan negotiated a deal with St. Mary's whereby she would only have to work three days a week, she would get unlimited time off for doctor's visits and she would receive a full-time salary and full benefits. Ryan Dep., p. 153. Ryan testified that in 2001 she had about two doctor's appointments in any given week; initially she could not remember how many she had from 1996 forward, or even whether it would have been more appointments, fewer appointments or the same number of appointments as she had in 2001. *Id.* at 135-36, 140. When pressed, Ryan stated that she had "[m]aybe 10 a month" during 1997. *Id.* at 141.

Because Ryan claims that she is substantially limited in the major life activities of walking and working, we must ask whether the evidence outlined above could support a decision by a reasonable trier of fact that this is so. As to walking, we conclude that it does not. Ryan testified that she had difficulty walking up stairs and could not walk more than one or two or three city blocks. But she also testified that if she stopped to rest, she might be able to continue, and she also testified that she was able to walk the two or so blocks from her attorney's office to opposing counsel's office just before the deposition. Although Ryan clearly has difficulty walking, the evidence does not demonstrate that her ability to walk is "substantially limited" as required by the ADA. *See Bond v. Sheahan*, 152 F. Supp. 2d 1055, 1067 (N.D. Ill. 2001) (the plaintiff's limitations – she had problems walking generally, walking up and down stairs and

5

could walk only about two blocks at a very slow pace before feeling short of breath – constitute only moderate restrictions on walking); *Bochenek v. Walgreen Co.*, 18 F. Supp. 2d 965, 970 (N.D. Ind. 1998) (plaintiff who experienced numbness and pain and could walk only a few blocks before needing to rest was not substantially limited in the major life activity of walking). To support her position, Ryan cited *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432 (7th Cir. 2000), *Nichols v. Unison Industries, Inc.*, No. 99-C-50194, 2001 WL 849528 (N.D. Ill. July 24, 2001), and *Davis v. Rockford Spring Co.*, Nos. 98 C 50351, 98 C 50352, 2000 WL 1847567 (N.D. Ill. Dec. 12, 2000). But none of those cases involved someone who could continue walking after resting, which is a different matter entirely.

Ryan also claims that her conditions substantially limit her in the major life activity of working. It is not enough for Ryan to show that she could not perform her job as business or personnel administrator at St. Mary's – and actually, she testified that she was able to perform all of her duties despite her conditions. Ryan must show that her impairments "substantially limit employment generally." *Sinkler v. Midwest Property management Limited Partnership*, 209 F.3d 678, 685 (7th Cir. 2000) (citing *Byrne v. Board of Education*, 979 F.2d 560, 565 (7th Cir. 1992)). Thus Ryan's burden on summary judgment is to show that she will be able to come up with evidence demonstrating that she is "significantly restricted in the ability to perform a class of jobs or a broad range of jobs in various classes." *Contreras v. Suncast Corporation*, 237 F.3d 756, 762-63 (7th Cir. 2001). To this end, Ryan argues that her "modified work schedule which includes reduced hours, a later starting time and time off for doctor's appointments" "substantially restrict[s] her ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person with comparable training, skills and abilities."

6

Memorandum in Opposition to Defendant's Motion for Summary Judgment, p. 6. She also argues that she is substantially limited in the major life activity of working because of her inability to lift or move more than ten pounds, her inability to bend at the waist repeatedly and her migraines, which leave her unable to function. *Id.* at 6-7. Ryan does not say what jobs or types of jobs she is precluded from doing, and she should have. Because "this is not one of the rare cases in which the [plaintiff's] impairments are so severe that [her] substantial foreclosure from the job market is obvious," at a minimum she was required to come up with some evidence of the types of jobs in her area from which she would have been excluded. *EEOC v. Rockwell International Corp.*, 243 F.3d 1012, 1017 (7th Cir. 2001). Moreover, the evidence shows that Ryan was able to perform her job as business and personnel manager for at least seven years after she was diagnosed with primary biliary cirrhosis and at least six years after being diagnosed with degenerative disc disease. Based on this evidence, even considering the various restrictions Ryan alleges and her education and experience, there is no question that a broad range of jobs remain open to Ryan, including many clerical office jobs. In short, she has failed to meet her burden of showing that she is impaired in employment generally. *See Sutton v. United Airlines, Inc.*, 527 U.S. 471, 492 (1999) ("If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs."); *Rockwell*, 243 F.3d at 1017 ("substantially limits" with respect to working means the plaintiff was restricted from performing the job from which she was disqualified as well as other jobs utilizing similar training, knowledge, and skills (a "class") or that she was restricted from performing the job from which she was disqualified as well as other jobs not utilizing similar training, knowledge and

7

skills (a "broad range of jobs in various classes")). It is true that Ryan had a very good deal at St. Mary's – she worked part time but received salary and benefits as if she worked full time – and it may be hard for her to find another employer willing to agree to those arrangements. But that sticky problem falls outside the scope of the ADA.

## Conclusion

For the reasons explained above, St. Mary's motion for summary judgment [27-1] is granted. St. Mary's motion to strike [35-1] is denied as moot. The Clerk is directed to enter judgment in favor of defendant. The date for filing the final pretrial order and the trial date of January 7, 2002 are vacated.

Dated: September 27, 2001

MATTHEW F. KENNELLY
United States District Judge